IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 23, 2000

## DANNY S. COSBY v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 98-A-826     Steve R. Dozier, Judge**

_____

**No. M1999-01861-CCA-R3-CD - Filed February 9, 2001**

_____

The Appellant, Danny S. Cosby, pleaded guilty to two counts of attempted first degree murder and to two counts of aggravated assault. Pursuant to a plea agreement, the Davidson County Criminal Court sentenced the Appellant to an effective sentence of thirty years in the Tennessee Department of Correction. The Appellant subsequently filed for post-conviction relief, claiming that his plea was constitutionally defective because he was inadequately represented. The trial court denied relief. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and DAVID H. WELLES, JJ., joined.

Dwight E. Scott, Nashville, Tennessee, for the appellant, Danny S. Cosby.

Paul G. Summers, Attorney General and Reporter; Clinton J. Morgan, Assistant Attorney General; Victor S. Johnson, District Attorney General and Kymberly Haas, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Appellant, Danny S. Cosby, pursuant to a plea agreement, entered guilty pleas to two counts of attempted first degree murder and to two counts of aggravated assault. The Appellant was sentenced to thirty years for each count of attempted first degree murder and to three years for each count of aggravated assault. The sentences were to be served concurrently, for an effective sentence of thirty years as a Range I standard offender with a thirty percent release eligibility date. Thereafter, the Appellant filed a petition for post-conviction relief, arguing that ineffective representation by his attorney resulted in his pleas being constitutionally defective. The post-conviction court denied relief. The Appellant argues on appeal that his attorney was ineffective in her representation of him prior to and at the time of his guilty pleas because she: (1) failed to follow through with further investigation of the Appellant's alleged mental defect at the time of the incident; (2) failed to pursue

the presentation of an alleged diminished capacity defense which the Appellant claims would have been substantiated by an expert; and (3) failed to adequately inform the Appellant of the evidence against him, the possible outcome of a trial, or the defenses he might raise. The Appellant further argues that he was under the influence of Thorazine at the time he entered his guilty pleas, which adversely affected his ability to reason and to comprehend information provided to him by his attorney and the trial court. The Appellant contends that had he been adequately represented by counsel, he would not have entered pleas of guilty and would have proceeded to trial.

After a careful review of the record, we conclude that the Appellant's allegations are without merit. Therefore, we affirm the judgment of the post-conviction court.

## FACTUAL BACKGROUND

The charges against the Appellant stem from an incident that occurred on December 20, 1997, when the Appellant stabbed Patricia Sharpe and her minor daughter, Michelle Crawford. The attack caused serious bodily injury to both victims. Kenneth Craig and Monquest Crawford, two minor males, were present in the house during the attack and witnessed the Appellant using or displaying the knife that he used to stab the two victims. As a result of the attack, the Appellant was charged with attempted first degree murder for stabbing Patricia Sharpe and Michelle Crawford and with aggravated assault for placing Kenneth Craig and Monquest Crawford in fear of imminent bodily injury.

## POST-CONVICTION HEARING

The evidence presented at the post-conviction hearing consisted of the testimony of the Appellant's trial counsel and the testimony of the Appellant. Counsel testified that she had been licensed to practice law since 1986 and had ten years experience as an Assistant Public Defender at the time of the post-conviction hearing. Her experience included handling "seventeen to twenty-two" jury trials, and she stated that "almost all of them" involved crimes of violence. She testified that she discussed with the Appellant the indictment, the elements of the charged offenses, and possible lesser-included offenses. She testified that she also discussed the evidence in the case with the Appellant. In counsel's opinion, the State's evidence supporting the aggravated assault charges was "much less" than the evidence supporting the attempted first degree murder charges. Counsel stated that she visited with the Appellant on eleven separate occasions, spending a total of a "little over six hours" with the Appellant.

According to counsel, the most viable trial strategy was to "try a diminished capacity defense based on [the Appellant's] use of drugs and alcohol." Counsel based this strategy in part on the Appellant's evaluation at Vanderbilt Psychiatric Department which revealed the Appellant to be competent and sane, thus precluding an insanity defense. However, the Appellant had a blood alcohol content of .21 at the time of the offenses which could possibly support a claim of diminished capacity.

Although the Appellant told counsel that he had used cocaine at the time of the offenses, counsel was unable to find any corroborating evidence to support this claim. In fact, counsel testified that the medical records from the time of the incident contained no drug screen on the Appellant, and the Appellant denied using illegal drugs when asked by a psychiatric social worker. Counsel testified that she contacted Dr. Oakley Ray as a possible witness to support the diminished capacity strategy, but there was no "extrinsic proof that [the Appellant] had used cocaine." Although counsel's trial strategy would have been an attempt to convince a jury to convict the Appellant of a lesser-included offense, she testified that such a result might have caused sentencing problems for the appellant. Because the Appellant had two convictions for Class D felonies and one conviction for a Class C felony, counsel testified that if the Appellant were convicted in this case of a Class B felony or a lesser-grade felony, the Appellant would have faced a Range II sentence.

Counsel testified that after she contacted Dr. Ray, but before Dr. Ray had seen the Appellant, the State proposed a plea agreement that would have resulted in an effective sentence of twenty-five years. The Appellant, acting upon the advice of counsel, decided to "hold off" accepting the offer at that time and proceeded with Dr. Ray's evaluation of the Appellant. Thereafter, Michelle Crawford developed further complications from her stab wounds and was hospitalized again, prompting the State to withdraw the twenty-five year offer and substitute an offer of thirty years, which the Appellant accepted.

Counsel testified that although the Appellant had an eighth-grade education, he seemed to understand his plea petition and the plea agreement. Counsel testified that she was not aware of the Appellant possibly buying or using drugs while he was in jail. Counsel further testified on cross-examination that the Appellant never wanted a trial[1] and that he was found to be "competent and sane" by the Vanderbilt Psychiatric Department, with no recommendation for any further evaluation. Counsel testified that she never perceived that the Appellant was being coerced into entering the plea.

The Appellant testified that his plea was not entered voluntarily. He admitted that he had been provided with a copy of the indictment by his counsel, that she went over the charges with him, and that she came to visit him in jail. The Appellant testified that he could not remember if counsel went over the evidence with him and that counsel did not talk to him about possible defenses.

The Appellant testified that he was taking Thorazine while he was in jail awaiting trial and discussing his case with counsel. The Appellant testified that he obtained the drugs from another inmate and took them "to maintain [his] sanity." The Appellant testified that, in his opinion, the drugs were affecting his ability to think, reason and understand what he was doing on the day of his plea, even though he had testified under oath on the day of the plea that he was not under the influence of any type of drug or narcotic. Although the Appellant testified that he did not really understand any of the written plea agreement, he testified that he understood that he was pleading

---

[1]Defense counsel and the Appellant both testified that the Appellant had experienced a jury trial prior to the plea in question on unrelated charges, for which he was found not guilty.

guilty to attempted first degree murder and that he would receive a sentence of thirty years to be served at thirty percent. The Appellant testified that he had previously agreed to accept the State's offer of twenty-five years, but defense counsel then said on the day of the plea that his sentence had been changed to thirty years.

During cross-examination, the Appellant explained that he did not take a Thorazine pill on the day he entered his plea, but Thorazine "could have been" in his system from a pill he took about a week before he entered his plea. The Appellant also admitted that his counsel had informed him prior to the day of his plea that the twenty-five year offer had been changed to thirty years and the reasons for the change. The Appellant admitted that he understood what he was doing when he entered pleas to felony charges in 1977, 1981, 1987, and 1993, as well as when he had entered guilty pleas to several misdemeanor offenses.

The post-conviction court, based on the evidence presented at the hearing, held that the Appellant had failed to prove his allegations and denied relief. In so doing, the post-conviction court found that the Appellant had "failed to demonstrate that counsel's performance was deficient, or that he suffered any prejudice as a result of counsel's performance." We agree.

## ANALYSIS

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. Tenn. Code Ann. § 40-30-203. The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. Id. § 40-30-210(f). A post-conviction court's findings of fact are afforded the weight of the jury and are conclusive on appeal unless the evidence in the record preponderates against those findings. Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of a particular case is de novo. Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998).

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). This right to representation includes the right to "reasonably effective" assistance. Burns, 6 S.W.3d at 461. The Tennessee Supreme Court has held that the issue of ineffective assistance of counsel is a mixed question of law and fact, and, as such, is subject to de novo review. Id.

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. Baxter, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and that this performance prejudiced the defense, resulting in a failure to produce a reliable result. Id. at 687; Cooper v. State, 849 S.W.2d 744, 747 (Tenn.1993). To satisfy the requirement of prejudice, a

petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding the petitioner's guilt. Strickland, 466 U.S. at 695. This reasonable probability must be "sufficient to undermine confidence in the outcome." Id. at 694; see also Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994).

This standard also applies to claims arising out of the plea process. Hill v. Lockhart, 474 U.S. 52, 58 (1985). To satisfy the requirement of prejudice in a case involving a guilty plea, the petitioner must demonstrate a reasonable probability that, but for counsel's errors, he or she "would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; see also Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. Strickland, 466 U.S. at 690; State v. Mitchell, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. Strickland, 466 U.S. at 690; Cooper, 849 S.W.2d at 746; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462. Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. Williams v. State, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980).

The Appellant has simply failed to prove that he received ineffective assistance of counsel in this case. The evidence at the post-conviction hearing does not prove any of the alleged acts of ineffective representation that are suggested by the Appellant. The testimony of the Appellant's trial counsel differs very little from the testimony of the Appellant, and the post-conviction court properly assessed the credibility of both witnesses and "credit[ed]" the testimony of counsel where there were discrepancies. The post-conviction court found that the Appellant's testimony that he was under the influence of Thorazine at the time of his plea to be "unpersuasive." The evidence clearly supports the findings of the post-conviction court in this case. We conclude, as did the post-conviction court, that the Appellant received effective representation in the trial court and that his guilty pleas were entered without any constitutional defects.

Accordingly, the judgment of the post-conviction court is AFFIRMED.

_____
ROBERT W. WEDEMEYER, JUDGE